## McGILLIN v. BENNETT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

No. 146.   Argued December 5, 6, 1889. — Decided December 16, 1889.

A contract between the parties as to the sale of, and payment for, a ranch
and cattle, interpreted as to the mode of payment provided for.

Where a defendant, on a trial, introduces, under the objection of the plain-
tiff, parol evidence of what occurred in negotiations between the parties
prior to the making of a contract between them, with a view to the con-
struction of the contract, he cannot on a writ of error to review a judg-
ment against him, allege as error the admission of such evidence.

THE case is stated in the opinion.

*Mr. S. V. White* (with whom was *Mr. Charles W. Gould*
on the brief) for plaintiff in error.

*Mr. J. B. Johnson* and *Mr. Charles E. Pope* (with whom
were *Mr. John L. Peak* and *Mr. A. McCoy* on the brief) for
defendants in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Superior Court of
Cook County, Illinois, by Milton H. Bennett and Robert L.
Dunman against Edward M. McGillin, and removed by the
defendant into the Circuit Court of the United States for the
Northern District of Illinois.   The suit was brought to recover
the sum of $108,150, with interest at six per cent per annum
from the 15th of July, 1885.   The defendant pleaded the gen-
eral issue and sundry special pleas.   The plaintiffs demurred
to the latter, the demurrer was sustained, and leave to amend
the pleas was denied.   There was also a plea of set-off, to
which there was a replication, joining issue; and there was a
similiter to the plea of the general issue.   On the written
waiver of a jury, the case was tried before the court, which
found the issues for the plaintiffs, and also made special find-

ings, and assessed the damages of the plaintiffs, at $115,580.55; for which amount, with costs, judgment was entered in their favor. To review that judgment, the defendant has brought a writ of error.

The suit was founded on a written instrument, dated April 16, 1885, a copy of which, as set out in the first count of the plaintiff's declaration, is contained in the margin.[1]

---

[1] "Know all men by these presents that we, Milton H. Bennett and Robert L. Dunman, composing the firm of Bennett and Dunman, for and in consideration of the sum of four hundred thousand dollars, to be paid as hereinafter provided, have this day sold, and do by these presents sell, transfer, assign and convey, unto Edward M. McGillin, of Cleveland, State of Ohio, the following-described personal property, to wit:

"All our ranch, cattle, horses, wagons, mules, hogs and ranch outfit, located in the Indian Territory, at or near the junction of the Arkansas and Cimaron Rivers, and more particularly described as follows, to wit, twelve thousand and five hundred head of cattle, to be counted, and averaging in age and sex about as follows: Three thousand head of three, four and five-year old steers; three thousand head of two-year olds, mixed; five thousand head of one-year olds, mixed; and fifteen hundred head of cows and bulls, calves born in 1885 not to be counted; all of said cattle being branded in one or more of the following brands, to wit: " [Here follow the brands.] " One hundred and twenty-five head of horses, branded in one or more of the above-described brands, and all the mules, wagons, harness, hogs and ranch outfit located on their said ranch and used in connection therewith, and all their right, title and interest in and to the above-described brands; also all their right, title and interest in and to a certain lease for one hundred and twenty-eight thousand acres of land, known as the Cherokee lease, dated October, 1883, and running five years from date thereof, at a yearly rental of two and one-half cents per acre; also all their right, title and interest in and to a certain lease for one hundred and twenty-seven thousand and two hundred and sixty-five acres of land, known as the Pawnee lease, dated June 1, 1884, and running five years from date thereof, at a yearly rental of three cents per acre, and if the Cherokee Stock Association shall get their lease extended we guarantee an extension of said lease on same terms and at the same prices secured by other members of said association; also three good ranch houses, three good corals, corn-cribs, stables, blacksmith shop, and everything used in operating said ranch; also twenty-two and one-half miles of wire fence, Glidden wire, four strands, and nearly all black walnut posts, and one horse pasture, two miles square, near ranch headquarters, to be fenced and completed; to have and to hold the said property above-described unto him, the said Edward M. McGillin, his heirs and assigns, forever.

" We agree to deliver possession of all the above-described property to

Opinion of the Court.

There is a bill of exceptions, which contains all the evidence offered on the trial by either party, and the special findings

the said Edward M. McGillin on the ranch on or before the 15th day of July, 1885, we to pay all ranch expenses, taxes and rental on lease up to date of delivery, the said Edward M. McGillin to refund to us all money paid by us on leases beyond date of delivery.

" Should the number of cattle delivered by us to the said Edward M. McGillin exceed twelve thousand and five hundred head, the said Edward M. McGillin is to pay us in cash the sum of twenty-five dollars per head for such excess, in addition to the other consideration herein provided for; and should said number fall short of twelve thousand five hundred head we are to credit the said Edward M. McGillin on the amount herein provided, to be paid at the rate of twenty-five dollars per head for such deficit.

" The consideration of four hundred thousand dollars above specified is to be paid by the said Edward M. McGillin as follows, to wit : The sum of twenty-five thousand dollars paid cash in hand, the receipt whereof is hereby acknowledged; the sum of seventy-five thousand dollars to be paid July 25, 1885, for which the said Edward M. McGillin is to execute his negotiable promissory notes of even date herewith, payable to us or our order at the Fourth National Bank of New York City on said 25th day of July, 1885, with eight per cent interest from date; sixty-six thousand dollars to be paid July 1, 1886; sixty-six thousand dollars to be paid November 1, 1886; for which said two last-named amounts the said Edward M. McGillin is to execute his several negotiable promissory notes bearing date on July 15, 1885, and payable to us or our order at the Fourth National Bank of New York City on said 1st day of July, 1886, and 1st day of November, 1886, with eight per cent interest per annum from date of said notes; the remaining one hundred and sixty-eight thousand dollars is to be paid by the said Edward M. McGillin on the 15th day of July, 1885, as follows, to wit : On said 15th day of July, 1885, the said Edward M. McGillin is to convey to us, the said Milton H. Bennett and Robert L. Dunman, by deed of general warranty, free and clear from all incumbrances, taxes and liens of every kind and character, eighty-four acres of land lying and situate in the county of Cook and State of Illinois, more particularly described as being in certain blocks of Crosby's and others' subdivision of the south half of section five, township thirty-seven N., R. thirteen, lying west of the Chicago, Rock Island and Pacific Railway; we, the said Milton H. Bennett and Robert L. Dunman, hereby covenanting that the property herein sold and conveyed to the said Edward M. McGillin is free and clear from all incumbrance, and that we will warrant and defend the title to the said cattle, horses and stock unto the said Edward M. McGillin, his heirs and assigns, forever; we, the said Milton H. Bennett and Robert L. Dunman, hereby expressly reserving a vendor's lien on all the property herein sold and conveyed for the security and payment of the two amounts of sixty-six thousand dollars each herein provided to be paid, respectively, on the 1st day of July, 1886, and the 1st day of November, 1886, hereby ex-

made by the court. The material parts of those findings are as follows: The parties executed the contract sued on. At the date of its execution, the defendant paid to the plaintiffs $25,000, and also delivered to them his promissory notes of that date for $75,000, due and payable July 25, 1885, with interest at eight per cent per annum. Those notes were thereafter, and before maturity, transferred for value, and were, after the commencement of this suit, paid in full by the defendant to the legal holders thereof. On and prior to July 14, 1885, the plaintiffs delivered to the defendant, and he accepted, the ranch and ranch outfit, as called for and described in the contract, and he took possession of the same; and, at the same time, they delivered to him 4854 head of the cattle called for by the contract, which were accepted by him, and were the only cattle delivered by them to him on the contract. There was a deficiency of 7646 cattle in the number called for by the contract. This deficiency, at the rate of $25 per head, amounted to $191,150, which the defendant was entitled to have credited upon the $400,000 which he was, by the contract, to pay to the plaintiffs for the ranch, ranch outfit and cattle. The failure of the plaintiffs to deliver the full number of cattle called for by the contract was by reason of heavy losses of cattle sustained by them, from cold and starvation, during the winter of 1884 and the spring of 1885, whereby their herd was reduced from about the number called for by the contract to the number actually delivered. When they made the contract they in

---

pressly reserving the right, power and authority to advertise and sell any or all of said property by giving thirty days' notice of the time and place of such sale in some daily newspaper published in the city of Kansas, Jackson County, Missouri, if said sums, together with all the interest due thereon, are not paid when due, according to the terms and tenor of the notes to be executed by the said Edward M. McGillin therefor.

"In testimony whereof, witness our hands and seals, this 16th day of April, 1885.

"MILTON H. BENNETT. [SEAL.]
"ROBERT L. DUNMAN. [SEAL.]

"I accept the above conveyance, and am bound by the terms and conditions thereof. Witness my hand and seal.
"EDWARD M. McGILLIN. [SEAL.]"

good faith believed that they had, and should be able to deliver to the defendant, the full number of 12,500 head, and were not aware of the losses until they attempted to round up or collect their cattle, at about the time the delivery was to be made. Neither the defendant nor his agents or employés had any information that the plaintiffs would not be able to deliver the 12,500 head of cattle, until notified by the latter, on the 14th of July, 1885, that they had delivered all the cattle belonging to the ranch, and could not deliver any more. Before the 1st of July, 1885, the defendant had caused a deed to be made out, and signed and acknowledged by himself and his wife, conveying to the plaintiffs the eighty-four acres of land in Cook County, Illinois, mentioned in the contract; but there was an apparent incumbrance upon the land, as shown by the record of land titles in Cook County, by a trust-deed dated June 28, 1878, to one Manning, as trustee, to secure the payment of $40,000 from the defendant to one Sawyer, and that trust-deed was not released and discharged until December 5, 1885; but, in fact, the indebtedness secured thereby had been fully paid on or before July 1, 1885. On the 15th of July, 1885, the plaintiffs did not transfer, or offer to transfer, to the defendant the two leases mentioned in the contract; and the parties agreed to meet at Kansas City, Missouri, within a few days after the said 15th of July, and then endeavor to adjust and settle all differences between them in regard to the contract. They did so meet in Kansas City, on the 17th of July, and the defendant then offered to convey to the plaintiffs the eighty-four acres of land in Cook County, on their paying to him $59,150, which conveyance the plaintiffs refused to accept on those terms. Thereupon, the defendant, to avoid litigation and as a compromise, as he said, offered to convey to the plaintiffs fifty-four acres of the Cook County land, in full payment of the balance due from him to them for the ranch and cattle. The plaintiffs refused to accept such offer; but the defendant did not tender any deed, either of the whole or of any part of the land. After such delivery of the ranch, ranch property and cattle to the defendant, the plaintiffs insisted that there was due to them from him $108,850, which should be divided

into two equal amounts and secured by the notes of the defendant, one payable on July 1, 1886, and the other on November 1, 1886, with interest on each note at the rate of eight per cent per annum. The plaintiffs also insisted that the sum of $191,150, to be credited to the defendant on the $400,000 purchase price to be paid for the ranch and cattle, should be applied as a credit to extinguish the payment to be made in the Cook County land. But the defendant refused to give the notes for $108,850, as demanded by the plaintiffs, and insisted that there was no cash payment or money due from him to them. The defendant declined to settle unless the plaintiffs would take in settlement the Cook County land. Thereupon, the defendant, by way of compromise, offered to the plaintiffs that if they would repay to him the $25,000 cash paid by him, and would return to him his notes for $75,000, given under the contract, he would surrender to them the possession of all property delivered, throw up the contract, and stand the loss of all moneys, amounting to about $5000, expended by him on the ranch. The plaintiffs declined this offer, stating that they had used the money and parted with the notes, and that the acceptance of the offer was entirely beyond their control. At the meeting in Kansas City, the plaintiffs advised the defendant of the amount which they had advanced for rent on the leases named in the contract, subsequently to July 15, 1885, and which was to be refunded by the defendant; and thereafter the latter paid said rental, and the plaintiffs duly transferred the leases to him. In the preliminary negotiations between the parties, which resulted in the contract, the defendant insisted that he would not purchase the ranch and cattle at the price of $400,000, unless the plaintiffs would take his Cook County land at the sum of $168,000, and the plaintiffs insisted that they would not sell for $400,000, unless they could receive about $250,000 in money, being willing to take the balance of such purchase price in the eighty-four acres of Cook County land. Before the contract was entered into, and while the negotiations for it were going on, the plaintiff Bennett visited Chicago and examined the Cook County land.

On these findings of fact, the court found against the de-

fendant, and he made a motion to set aside such finding, and for a new trial. The motion was denied, and the defendant excepted. He then moved in arrest of judgment; but the motion was denied, and he excepted. The court then rendered judgment upon the findings, in favor of the plaintiffs and against the defendant, and the latter excepted. There is no exception by the defendant to any ruling of the court in the course of the trial; and the only question open for consideration is whether the judgment is supported by the special findings.

The opinion of the Circuit Court, held by Judge Blodgett, accompanying its findings and forming part of the record, is reported as *Bennett v. McGillin*, 28 Fed. Rep. 411. The opinion states that the controversy in the case is as to whether the plaintiffs were bound to accept the Cook County land at the price of $168,000, and make up in cash the deficiency in that price, or whether the plaintiffs could insist that the credit for the $191,150 shortage on the cattle should be applied first to extinguish the payment of $168,000 to be made in Cook County land, and then upon the amount to be secured by the $132,000 of notes to fall due in July and November, 1886, thus leaving a balance of $108,150 due to the plaintiffs; and that the suit to recover that balance was brought on the ground that, the defendant having refused to give his notes, such balance became at once a money demand.

The court took the view that when the actual count of the cattle showed a shortage of 7646 head in the number necessary to make up the 12,500, the defendant might properly have refused to accept the property, and have put the plaintiffs in default on their part of the contract; but that he elected to accept what the plaintiffs had to deliver, and must be held to have assented thereby to such readjustment of the terms of the contract as was made necessary by the changed facts; that the contract gave to the defendant the option of paying $168,000 of the purchase-money by conveying the Cook County land; that if the defendant declined to make the conveyance, or was unable to give a good title, the $168,000 would at once become a money payment, payable in cash on the 15th of July,

1885 ; and that, if the plaintiffs delivered the whole number of 12,500 cattle, they would be entitled to the two notes of $66,000 each, and also to a deed of the Cook County land, or to the $168,000 in cash, in case the defendant should refuse, or be unable, to make a deed.

The court was, therefore, of opinion that the $168,000 was to be treated as a present or cash payment; that the deficiency in cattle, of $191,150, being 7646 head at $25 per head, which was to be credited to the defendant, should be appropriated in liquidation of the cash payment of $168,000, such credit being thus applied to the cash payment which the defendant would be called upon to make in case he should be unable to make the title at the time called for; that the $168,000 to be liquidated by the land was a present payment, whether made in money or land : that if, by the terms of the contract, the defendant was entitled to a credit equal to or exceeding the $168,000, that credit should be applied thereon, rather than upon the deferred payments to be evidenced by notes, because the $168,000 was a payment down, to be made on the 15th of July, 1885 ; that, therefore, as $100,000 had been paid in cash on the $400,000 purchase price, leaving $300,000 due, a credit thereon of the $191,150 deficiency in cattle left due to the plaintiffs $108,850, for which amount the court held that the defendant should have given his notes, payable in July and November, 1886, with interest, at eight per cent per annum ; and that, as he declined to give such notes, or any notes, such balance became a present demand, for which the plaintiffs could sue. It therefore ordered judgment for the plaintiffs, for $108,850, with interest at six per cent from July 15, 1885.

Although, as appears by the bill of exceptions, the defendant at the trial introduced evidence, under the objections and exceptions of the plaintiffs, of the circumstances attending the execution of the contract, of the relative situation of the parties, and of the negotiations, correspondence, and interviews between them and their agents, leading up to its execution, to enable the court better to understand and construe the contract, the defendant now seriously alleges as error the admission of such parol evidence. The point is not tenable.

It appears, from the findings of fact, that the court considered the evidence so introduced by the defendant; and he cannot now object to it.

We are of opinion that the conclusion of law of the Circuit Court, from the findings of fact, was correct. Of course, the credit of $191,150 for the 7646 head of cattle deficient, at $25 per head, was not intended by the contract to be applied on the cash payment of $25,000, made April 16, 1885, or on the payment of $75,000 provided for by the promissory notes made April 16, 1885, and due July 25, 1885. The question of a shortage in the number of cattle was not to be determined, and was not determined, before the 15th of July, 1885, and the contract does not provide for repaying any part of the $100,000. Therefore, the credit of $191,150 could be applied only on the $300,000 remaining unpaid on the 15th of July, 1885. On that day, the payment of $168,000 was to be made. By the contract, if there was an excess of cattle over 12,500 head, the payment to be made by the defendant on that day would be more than $168,000, (exclusive of the $132,000 payable in 1886,) but that excess was to be paid in cash. If there was a shortage in the number of cattle, and a credit to be made to the defendant therefor on the $400,000 purchase price, the amount of that credit was to be made on the 15th of July, 1885, the same day the $168,000 was to be paid. It is clear, therefore, that the amount of the excess was to be added to that payment, or the amount of the credit was to be deducted therefrom. The payment to be made on the 15th of July, 1885, would be greater or less than the $168,000, as the number of cattle exceeded or fell short of 12,500 head. The $108,850 became due July 15, 1885, and the defendant, according to the terms of the contract, ought then to have given his notes therefor, payable, one-half July 1, 1886, and one-half November 1, 1886. He refused to give such notes. As the payments to be made July 1, 1886, and November 1, 1886, were not due on July 15, 1885, and a vendors' lien was expressly reserved in respect of those payments, there is no solution of the problem, except to deduct from the $191,150 deficiency in cattle the $168,000 payment to be made in land

or money, July 15, 1885, leaving $23,150, and to deduct that from the $132,000 payable in 1886, leaving $108,850 due to the plaintiffs, with interest from July 15, 1885; for which sum judgment was had. On the facts found, showing that the defendant was not prepared or able to deliver to the plaintiffs, on the 15th of July, 1885, a deed for the 84 acres of land in Cook County, Illinois, the $168,000 became on that day a cash payment.

The judgment of the Circuit Court is

*Affirmed.*