[Civil No. 994.   Filed March 22, 1907.]

[89 Pac. 408.]

## J. N. PORTER, Defendant and Appellant, v. J. W. BROWN, Plaintiff and Appellee.

1. CONTRACTS — SALES — BREACH — VENDOR'S REMEDIES — DAMAGES— MEASURE.—Where a vendor sells certain property to a vendee at a fixed price, and agrees to accept in payment steers to be valued according to age, and said contract is amended so that the vendor is to accept four hundred she-cattle in payment of said fixed price, irrespective of their value per head, and the vendee fails to deliver said she-cattle, the vendor is entitled to recover the amount of said fixed price as a money demand, the measure of his damages being the price fixed in the contract and not the value of the she-cattle at the time and place of delivery.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. Frederick S. Nave, Judge. Affirmed.

The necessary facts are stated in the opinion.

E. J. Edwards, for Appellant.

It is a well-settled rule of law that if a subsequent contract includes and goes beyond the terms of the first contract, the first contract is superseded by the later one. *Munford* v. *Wilson,* 15 Mo. 540; *Stow* v. *Russell,* 36 Ill. 18; *Rhodes* v. *Thomas,* 2 Ind. 638; *Mather* v. *Butler,* 28 Iowa, 253.

Geo. J. Stoneman, and L. L. Henry, for Appellee.

KENT, C. J.—Brown brought suit against Porter to recover the purchase price of a certain number of horses and

other stock sold by Brown to Porter. The case was tried by the court without a jury, and from a judgment in favor of the plaintiff the defendant has appealed.

It appears by the evidence in the case that on the 5th of September, 1904, an agreement in writing was entered into between the parties, whereby Brown sold to Porter by bill of sale of that date a number of horses and cattle for the purchase price of $6,750; such purchase price to be paid by Porter by his conveying to Brown a half-interest in certain improvements on a ranch known as the "Gilson Ranch," to the extent of $1,000 thereof, the balance, to wit, $5,750, to be paid in steers, "ones at $15, twos at $18, threes and up at $21"; such steers to be delivered by Porter to Brown as in said agreement provided. Thereafter, and on the 14th of November in the same year, a second agreement in writing was made between the parties, as follows:

"That whereas on the 5th of September, A. D. 1904, the said J. W. Brown executed to the said J. N. Porter a bill of sale to certain cattle, horses, etc., as shown by the said bill of sale which is now in the possession of J. N. Porter, the consideration being that the said J. N. Porter sold and delivered to said J. W. Brown a one-half interest in and to the Gilson ranch improvements, and agreed to deliver to said Brown as the balance of the consideration, steers to the value of $5,750.00, as per prices for steers agreed upon in a certain instrument of writing of even date with said bill of sale.

"And whereas, the said J. W. Brown now desires to sell the said Gilson ranch improvements back to the said Porter, and in lieu of steers to accept and receive she cattle, as hereinafter mentioned and set forth.

"Now, therefore, I, the said J. W. Brown do hereby reconvey, bargain, sell and deliver to the said J. N. Porter the one-half interest in and to the Gilson ranch improvements, heretofore conveyed to me by the said Porter.

"And it is hereby agreed by and between us the said J. W. Brown and J. N. Porter, that in lieu of the steers heretofore mentioned, that the said J. N. Porter is to deliver to the said J. W. Brown, on or before July 1st, 1905, ten days' notice of delivery to be given, four hundred head of merchantable she cattle, from one to eight years old, both ages inclusive, and to be at said J. N. Porter's option as to ages except that a greater per cent must be in one year old heifers, and said delivery to be made at any practicable place within

fifty miles of Fort Grant, Arizona, and the said Porter is not to buy outside Mexican cattle to fill this contract, but may fill it with any cattle he is now interested in.

"And it is further agreed and understood that the cattle, horses, etc., heretofore sold to said J. N. Porter by the said Brown as mentioned in the said bill of sale of date on or about September 5th, 1904, shall come to the said Porter free from any and all encumbrances, and it is further understood that the delivery of the said she cattle to the said Brown, shall be subject to any advances or debts due by the said Brown to the said J. N. Porter, or any institution with which he is connected."

The evidence further showed that, although Brown was always ready and willing to receive the cattle, and made demand upon Porter therefor, Porter never delivered to Brown any of the cattle called for in the agreement, for the reason, as testified to by Porter, that he was unable to make a settlement with Brown of the indebtedness due to Porter from Brown. It appears from the record that five promissory notes from Brown, apparently running to Porter or the bank with which he was connected, were put in evidence by the defendant, but the notes are not preserved in the record and are not before us.

The trial court found as facts that Brown sold to Porter certain cattle of the value of $6,750, and agreed in writing to take from Porter in payment thereof certain other cattle of the value of $5,750, and a half interest in the Gilson ranch improvements of the value of $1,000; that said agreement was on the fourteenth day of November, 1904, modified and changed in the respect that, in lieu of the cattle of the value of $5,750 agreed to be delivered under the terms of the first contract, Porter should deliver to Brown four hundred head of merchantable she-cattle, as in said agreement provided, and that the delivery of such cattle should be subject to any advances or debts due by Brown to Porter, or any institution with which Porter was connected; that, though Brown was ready and willing to receive from Porter the delivery of the said four hundred head of merchantable she-cattle according to the terms and conditions of the agreement, the defendant did not deliver to the plaintiff the cattle at any time. The court further found that, at the date when delivery of the cattle should have been made by Porter, Brown was indebted to Porter, or the institution with which he was

connected, upon three promissory notes, in the sum of $3,061.-
29, and, by deducting this amount from $5,750, found that
there was due from Porter to Brown the sum of $2,688.71.
And as conclusions of law the court found that under the
terms of the agreement of November 14, 1904, the defendant,
Porter, was required to deliver to the plaintiff, Brown, four
hundred head of merchantable she-cattle; and, as a further
conclusion, found "that the value of said four hundred head
of merchantable she-cattle agreed upon between plaintiff and
defendant on the fourteenth day of November, 1904, was and
is the sum of $5,750, to be paid by defendant to plaintiff
in part payment of the sale and delivery to the defendant
by the plaintiff of certain other property theretofore owned
by plaintiff, of the value of $6,750, and that upon the failure
and refusal on the part of said J. N. Porter, defendant above
named, to deliver to plaintiff said four hundred head of mer-
chantable she-cattle at the time and place agreed upon, said
part of the value of the property sold by plaintiff to defend-
ant became and now is a money demand due from the de-
fendant to the plaintiff in the sum of $5,750, and the plaintiff
is entitled to a judgment and decree of this court against the
defendant, J. N. Porter, for the sum of $5,750, as of August
10, 1905," less an offset in the sum of $3,061.29, being the
amount due on said promissory notes; and entered judgment
accordingly.

The first assignment is that the evidence does not sustain
the judgment of the court, and seems to be based upon the
ground that the court erred in considering the agreement of
September 5, 1904, the first agreement between the parties,
as a part and parcel of the agreement of November 14th, the
appellant claiming that the latter agreement should stand or
fall by its own terms, without reference to the former agree-
ment.   We do not think the position of the appellant is well
taken, but think that the court below was right in considering
that the agreement of November 14th was a modification of
the former agreement, and that the two agreements were to
be construed together in determining the intent of the par-
ties.

The second and third assignments of error are insufficient
for our consideration.

By the fourth and fifth assignments of error the appellant
claims that the trial court erred in allowing as an offset
but three of the five promissory notes introduced in evidence,

and rejecting the other two. The promissory notes are not in the record, and we have no means of ascertaining whether or not the court was right in its assumption that the two notes excluded were not properly to be treated as offsets under the agreement.

By the remaining assignments of error the appellant contends that the trial court erred in finding the value of the four hundred head of merchantable she-cattle to be the sum of $5,750, as there was no proof given of the value of the cattle. We do not think that such proof was requisite under the pleadings and proof in the case. This was not an action for damages for failure on the part of Porter to deliver the cattle, in which case the measure of damages would be the value thereof at the time and place of the delivery, but an action brought to recover the purchase price to be paid for the horses and stock sold by Brown to Porter upon Porter's failure to carry out the terms of sale. The agreement of September 5th clearly shows that $5,750 of such purchase price was to be paid in steers, and under such first agreement a number of steers, according to their values by age as in such agreement specified, were to be delivered by Porter sufficient to equal this sum of $5,750. Thereafter, and by the agreement of November 14th, in lieu of steers at various values, a definite number of she-cattle, to wit, four hundred head, were substituted by the parties for such steers, to be delivered in payment of said sum of $5,750, irrespective of their value per head. This portion of the purchase price was therefore definitely fixed and agreed upon in the sum of $5,750, and was payable by Porter by delivering such four hundred head of cattle; and the court below rightly held that, upon the failure and refusal upon the part of Porter to deliver to Brown the four hundred head, that portion of the purchase price of the stock sold by Brown to Porter became and was a money demand due from Porter to Brown in the sum of $5,750, and that Brown was entitled to a judgment therefor, less the amount of offsets as shown by the promissory notes. Where the part consideration for the purchase of property is other property to be delivered by the purchaser, which by the terms of the agreement is a fixed proportion of the purchase price, the purchaser may avail himself of the privilege of making payment by delivery of such property; but in case of his failure or refusal so to do, the primary object of the promise will prevail, and the price

agreed upon will become a money demand. *McGillin* v. *Bennett*, 132 U. S. 445, 10 Sup. Ct. 122, 33 L. Ed. 422; *Baker* v. *Todd*, 6 Tex. 273, 55 Am. Dec. 775; *Corbett* v. *Sayers*, 29 Tex. Civ. App. 68, 69 S. W. 108.

We find no error in the record, and the judgment of the district court is affirmed.

SLOAN, DOAN, and CAMPBELL, JJ., concur.